**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MORGAN DREXEN, INC., *et al.* |
| Plaintiffs, |
| v. |
| CONSUMER FINANCIAL PROTECTION BUREAU |
| Defendant. |

Civil Action No. 13-01112 (CKK)

**MEMORANDUM OPINION**
(October 17, 2013)

Plaintiffs Morgan Drexen, Inc. ("Morgan Drexen") and Kimberly Pisinski ("Pisinski") bring this action against Defendant Consumer Financial Protection Bureau ("CFPB" or "Bureau") alleging that Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. §§ 5841 *et seq.*) is unconstitutional as a violation of separation of powers principles.  Presently before the Court are Plaintiffs' [13] Motion for Summary Judgment, Plaintiffs' [15] Motion for a Temporary Restraining Order and Preliminary Injunction Enjoining CFPB From Prosecuting its Second-Filed Action, and Defendant's [17] Motion to Dismiss or, in the Alternative, for Summary Judgment.  Upon consideration of the pleadings[1], the relevant legal

---

[1] Complaint, ECF No. [1] ("Compl."); Decl. of Walter Ledda, ECF No. [3-2] ("Ledda Decl."); Decl. of Kimberly A. Pisinski, ECF No. [3-3] ("Pisinski Decl."); Decl. of Randal Shaheen, ECF No. [3-5] ("Shaheen Decl."); Pls.' Mot. for Summ. J., ECF No. [13] ("Pls.' MSJ"); Pls.' Mot. for Temp. Restraining Order and Prelim. Inj. Enjoining CFPB from Prosecuting its Second-Filed Action, ECF No. [15] ("Pls.' PI Mot."); Mem. of P&A in Supp. of Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. and in Opp'n to Pls.' Mot for Summ. J., ECF No. [17-1] ("Def.'s MTD"); Def.'s Mem. in Opp'n to Pls.' Mot. for Temp. Restraining Order and Prelim. Inj. Enjoining CFPB from Prosecuting its Second-Filed Action, ECF No. [18] ("Def.'s PI Opp'n"); Pls.' Reply to Opp'n to Pls.' Mot. for Temp. Restraining Order and Prelim. Inj. Enjoining CFPB from Prosecuting its Second-Filed Action, ECF No. [19] ("Pls.' PI Reply"); Pls.' Mem. in Opp'n

authorities, and the record as a whole, the Court GRANTS Defendant's [17] Motion to Dismiss or, in the Alternative, for Summary Judgment.  Because this Court dismisses this action without reaching the merits of Plaintiffs' constitutional challenge, Plaintiffs' [13] Motion for Summary Judgment is DENIED WITHOUT PREJUDICE.  Similarly, because this action is dismissed without prejudice in its entirety, Plaintiffs' [15] Motion for a Temporary Restraining Order and Preliminary Injunction Enjoining CFPB From Prosecuting its Second-Filed Action is DENIED AS MOOT.

## I. BACKGROUND

### A. Factual Background

#### 1. The Consumer Financial Protection Bureau and its Enforcement Powers

On July 21, 2010, the President signed the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).  Title X of the Dodd-Frank Act established the Consumer Financial Protection Bureau as an "independent bureau" within the Federal Reserve System, 12 U.S.C. § 5491(a).  The Bureau is tasked with the responsibility for "ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive," *id.* § 5511(a).

Pursuant to Title X, the Bureau bears the responsibility for "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws," 12 U.S.C. § 5491(a), a corpus of law that includes 18 pre-existing statutes, which are collectively

---

to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. [20] ("Pls.' MTD Opp'n"); Pls.' Reply to Opp'n to Pls.' Mot. for Summ. J., ECF No. [21] ("Pls.' MSJ Reply"); Def.'s Reply to Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. [22] ("Def.'s MTD Reply").

referred to as "enumerated consumer laws," as well as Title X itself. *Id.* § 5481(12), (14). Title X prohibits "covered persons" (generally, providers of consumer financial products and services, *see id.* § 5481(6)) from "engag[ing] in any unfair, deceptive, or abusive act or practice" in violation of Title X or from violating, or offering or providing consumers with a financial product or service not in conformity with federal consumer financial law. *Id.* §§ 5531(a), 5536(a)(1). The Bureau also has the authority to enforce the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act") "with respect to the offering or provision of a consumer financial product or service." 15 U.S.C. § 6105(d). The Telemarketing Act generally prohibits "deceptive telemarketing acts or practices and other abusive telemarketing acts or practices," *id.* § 6102(a)(1), and has been implemented by the Federal Trade Commission through the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which the Bureau is also authorized to enforce. *See* 15 U.S.C. § 6102(c)(2).

Pursuant to the Dodd-Frank Act, the Bureau is empowered to engage in investigations and bring enforcement actions. 12 U.S.C. § 5562. When conducting investigations, the Bureau may issue civil investigative demands ("CIDs"), a form of administrative subpoena that may direct the recipient to produce documents or other materials or to provide information or oral testimony. *Id.* § 5562(c). A CID recipient may petition the Director of the CFPB to modify or set aside the CID, and the CID is unenforceable while such a petition is pending. *Id.* §5562(f). Materials submitted in response to a CID are considered confidential, *id.* §5562(d), and a recipient may withhold responsive material based on a "claim of privilege," 12 C.F.R. § 1080.8(a). CIDs are not self-enforcing, and Title X does not impose a fine or penalty for failure to comply with a CID. Instead, in the event of noncompliance with a CID, the Bureau may file a petition in federal district court seeking enforcement of the CID. 12 U.S.C. § 5562(e).

The Bureau may bring enforcement actions in either of two forums. First, the Bureau may bring an administrative proceeding before an administrative law judge. *Id.* § 5563. The administrative law judge's recommended decision in the proceeding is subject to review by the Director of the CFPB, whose final decision is subject to judicial review. *Id.* Alternatively the CFPB is empowered to commence a civil enforcement action in federal district court. *Id.* § 5564.

### 2. Plaintiffs and the Bureau's Investigation

Plaintiff Morgan Drexen is a Nevada corporation with its principal place of business in Costa Mesa, California. Compl. ¶ 5. According to Morgan Drexen, its business consists of licensing proprietary software to law firms and providing these firms with live support services. Ledda Decl. ¶ 2. In the words of its Chief Executive Officer, Walter Ledda, "Morgan Drexen provides non-attorney paralegal support services to attorneys in the areas of debt resolution, bankruptcy, personal injury, mass tort litigation, and tax preparation." *Id.* at ¶ 3. Plaintiff Kimberly Pisinski is an attorney admitted to practice law in Connecticut. Pisinski Decl. ¶ 1. Pisinski describes herself as an attorney-client of Morgan Drexen and claims that she contracts with Morgan Drexen to provide "non-attorney/paralegal services" for her clients as part of her bankruptcy practice. *Id.* at ¶ 3.

In early 2012, the Bureau began investigating Morgan Drexen for possible violations of the TSR, the Dodd-Frank Act, and other laws. Compl. ¶¶ 39. On March 13, 2012, CFPB issued a CID to Morgan Drexen seeking records related to its debt settlement business. *Id;* Shaheen Decl. ¶ 4, Ex. 1 (Civil Investigative Demand). The information requested included communications between Morgan Drexen and associated attorneys concerning attorney clients, and various personal financial data. Shaheen Decl., Ex. 1. Morgan Drexen responded to the

CID on April 13, 2012. *Id.* at ¶ 6, Ex. 3 (First Response of Morgan Drexen, Inc. to Civil Investigative Demand). As the investigation proceeded, the CFPB sought records from third parties and deposed various officers of Morgan Drexen, including Ledda. *Id.* at ¶¶ 34-37. In addition, as part of the investigative process, the Bureau sought documents from Morgan Drexen relating to Pisinski's clients. Pisinski Decl. ¶ 4. Pisinski asserts that she has not authorized Morgan Drexen to produce these documents, which she believes are subject to the attorney-client privilege. *Id.* at ¶¶ 4-5.

On April 22, 2013, upon the conclusion of its investigation, the Bureau advised Morgan Drexen's counsel via letter that it was considering bringing an enforcement action against the company and Ledda. Shaheen Decl. ¶ 38, Ex. 32 (Letter from Wendy Weinberg to Randal Shaheen). Specifically, the letter stated that "the CFPB's Office of Enforcement is considering recommending that the Bureau take legal action against your clients Morgan Drexen, Inc., and Walter Ledda . . . the staff expects to allege that your clients violated Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. § 5536 and the Telemarketing Sales Rule,16 C.F.R. § 310. In connection with the contemplated action, the staff may seek injunctive and monetary relief against your clients." *Id.* On May 8, 2013, Morgan Drexen responded with a written submission making factual, statutory, and First Amendment arguments for why the Bureau should not file an enforcement action against it. *Id.* at ¶ 39, Ex. 33 (Letter from Randal Sheehan to Lucy Morris).

**B. Procedural History**

On July 22, 2013, Morgan Drexen and Pisinski filed this lawsuit, alleging that "Title X of the Dodd-Frank Act violates the Constitution's separation of powers." Compl. ¶ 120. Plaintiffs seek permanent injunctive relief as well as a declaration that "the provisions of the Dodd-Frank

Act creating and empowering the CFPB" are unconstitutional. Compl. at 20. Plaintiffs initially accompanied their Complaint with a Motion for a Preliminary Injunction. *See* Motion for Preliminary Injunction and Request for Oral Argument Pursuant to LCvR 7(f) and LCvR 78.1 and a Hearing Pursuant to LCvR 65.1(d), ECF No. [3]. However, after on-the-record telephone hearings with the Court on July 24 and July 25, 2013, Plaintiffs agreed to withdraw their motion for preliminary injunctive relief and instead elected to proceed with expedited briefing on the merits of their complaint. *See* Order (July 25, 2013), ECF No. [8]. During the July 25, 2013 telephone hearing, the following exchange occurred between the Court and counsel for the Bureau:

> THE COURT: . . . Can I make an assumption that from the defendant's perspective, since you indicate that [the civil investigative demands] were not self-enforcing, that during this period of time you would not be filing an enforcement action?
>
> MR. COLEMAN: Your Honor, that determination is not mine to make.
>
> THE COURT: Okay.
>
> MR. COLEMAN: I don't know the answer to that.
>
> THE COURT: It would be helpful to obviously have some sense of whether you're doing it in terms of the context of how long a period of time. I indicated that this would be an expedited schedule and I would make an expedited decision. It would be helpful, probably, not to have an enforcement action, which they're claiming is unconstitutional, going on at the same time. That was my question.
>
> MR. COLEMAN: Your Honor, I understand your concern. . . . *We have not yet determined whether or not to file an enforcement action, and I can't commit to what we will do in that regard during the course of our briefing here.*
>
> THE COURT: Okay. All right. Well, whenever you make a decision about it, it would be helpful if you let the Court know.
>
> MR. COLEMAN: Of course, Your Honor, . . .

Transcript of July 25, 2013 Conference Call at 5:10-6:11 (emphasis added).   Plaintiffs subsequently filed their [13] Motion for Summary Judgment on August 7, 2013.

On August 20, 2013, pursuant to its authority to bring enforcement actions under 12 U.S.C. § 5564(a) and 15 U.S.C. §§ 6102(c)(2) and 6105(d), the CFPB filed a complaint against Morgan Drexen and Ledda in the United States District Court for the Central District of California.   *See CFPB v. Morgan Drexen, Inc.* No. 8:13-cv-1267 (C.D. Ca.) (JLS-JEM).   Based on the CFPB's year-long investigation of Morgan Drexen, this complaint alleges violations of the TSR and the Dodd-Frank Act's prohibition on deceptive acts and practices, including the provisions highlighted in the Bureau's April 22, 2013 letter to Morgan Drexen.   Complaint ¶ 1, *CFPB v. Morgan Drexen, Inc.* No. 8:13-cv-1267 (C.D. Ca.) (JLS-JEM).   Specifically, the Bureau alleges that Morgan Drexen and Ledda violated federal laws by charging consumers illegal up-front fees for debt relief services and deceiving consumers about the likelihood that they would become debt-free by working with Morgan Drexen.   *Id.* at ¶¶ 55-60.   In this enforcement action, the CFPB seeks injunctive relief, consumer redress, and civil monetary penalties.   *Id.* at ¶ 100. The CFPB advised this Court of this suit on the date of its filing, and noted that it would "address the significance of its enforcement action in its memorandum of points and authorities opposing Plaintiffs' motion for summary judgment . . . ."   *See* Notice by Consumer Financial Protection Bureau, ECF No. [14].

On August 22, 2013, two days after the CFPB commenced the California enforcement action, Plaintiffs filed their [15] Motion for a Temporary Restraining Order and Preliminary Injunction Enjoining CFPB from Prosecuting its Second-Filed Action in this Court.   In this motion, Plaintiffs request that the Court issue a preliminary injunction preventing CFPB from

moving forward with the California action until this Court has resolved this first-filed matter.[2] On August 27, 2013, Defendant filed its [17] Motion to Dismiss or, in the Alternative, for Summary Judgment.

## II. LEGAL STANDARD

Defendant moves to dismiss the Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In the alternative, they seek summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiffs' claims that the Bureau's structure violates separation of powers principles.

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

---

[2] Although styled as a motion for a preliminary injunction, Plaintiffs' motion based its arguments for an injunction on first-to-file considerations rather than the traditional factors for preliminary injunctive relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (holding that a plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction would be in the public interest).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.,* 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).  Furthermore, and of particular relevance here, when a plaintiff seeking declaratory and injunctive relief has an "adequate remedy at law for the asserted violation of his constitutional rights," the claim must be "dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Leitner v. United States*, 725 F.Supp.2d 36, 43 (D.D.C. 2010).

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed

in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### III. DISCUSSION

The CFPB argues that this Court should decline to exercise jurisdiction in this case. First, it argues that because Morgan Drexen can obtain complete relief on its constitutional claim in the currently pending enforcement action in the Central District of California, injunctive and declaratory relief in this Court would be inappropriate. Def.'s MTD at 11-22. Second, the Bureau contends that Pisinski lacks Article III standing to press her claims in this Court. *Id.* at 22-24. The Court finds both of these contentions persuasive, and Plaintiffs' arguments to the contrary unavailing. Accordingly, this Court dismisses this matter without prejudice in the Bureau's favor without addressing the merits of Plaintiffs' constitutional challenge to the CFPB.

### A. Injunctive Relief

As the Supreme Court has repeatedly cautioned, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2761, 177 L.Ed.2d 461 (2010). *See also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (noting that "[a]n injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354 (1919)). Indeed, "[i]t is a

'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party [1] has an adequate remedy at law and [2] will not suffer irreparable injury if denied injunctive relief.'"   *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)) (brackets added).

As the Bureau points out, Morgan Drexen has shown neither the absence of an adequate remedy at law nor the existence of irreparable harm if injunctive relief is denied.  Def.'s MTD at 11-17.  First, Morgan Drexen has an adequate remedy to address its claims of the Bureau's unconstitutionality.  Plaintiff can move to dismiss the pending enforcement action in the Central District of California on the grounds that the Bureau is unconstitutional as a violation of separation of powers.  "Where a party, if his theory of the controversy is correct, has a good defence at law to 'a purely legal demand,' he should be left to that means of defense, as he has no occasion to resort to a court of equity for relief . . . ."   *Phoenix Mut. Life. Ins. Co. v. Bailey*, 80 U.S. 616, 623, 20 L.Ed. 501 (1871).  Similarly, Morgan Drexen has not established that denying it injunctive relief here and requiring it to raise its constitutional challenge as a defense in the enforcement proceeding would constitute irreparable harm.  Indeed, any harm alleged by Morgan Drexen here can be remedied by a favorable ruling in the California Court.  Moreover, as Defendant points out, any previous harm caused by the Bureau's completed investigation is not properly remedied by prospective injunctive relief absent a showing that the harm is likely to recur.  *See Coal v. Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012) ("Even if a plaintiff has suffered past harm from the kind of conduct the suit seeks to enjoin, the plaintiff must establish a real and immediate threat that the harm-producing conduct will recur.") (internal citation omitted).  The only harm caused by a denial of the instant injunctive relief

sought here would be additional litigation cost, and "courts have uniformly recognized that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *McGinn, Smith & Co. v. Fin. Indus. Regulatory Auth.*, 786 F.Supp.2d 139, 147 (D.D.C. 2011) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). *See also I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986) ("Formidable as it is, the cost and delay associated with modern-day litigation simply does not establish irreparable harm.").   In light of these considerations, providing Plaintiff the opportunity for the "drastic and extraordinary remedy" of injunctive relief in this Court is plainly improper.   Morgan Drexen may raise its constitutional challenge as a defense in the pending enforcement action in the Central District of California.

In the parallel case of *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987), the D.C. Circuit reached the identical conclusion, declining to adjudicate a constitutional challenge based on separation of powers when such a claim could be raised as a defense in a pending enforcement action.   *Deaver* involved a former White House Deputy Chief of Staff under investigation for illegal lobbying activities.   *Id.* at 67.   After being warned by the independent counsel investigating the matter that an indictment against him was being sought, the plaintiff filed a civil complaint in this court, alleging that the Ethics in Government Act (from which the independent counsel drew his authority) was unconstitutional as a violation of separation of powers.   *Id.* In his complaint, the plaintiff sought a declaratory judgment and an injunction barring the independent counsel from obtaining an indictment, claiming that in the absence of such relief, he would suffer irreparable harm in the form of "'continuing destruction of his business,' 'injury to his reputation and dignity,' and 'the expenditure of substantial resources in his defense." *Id.* at 67-68.   The D.C. Circuit rejected Deaver's request for injunctive relief,

concluding that he could raise his separation of powers challenge to the provision as a preliminary defense in the ultimate prosecution.  "[A] federal prosecutor typically brings cases only in federal court, thereby affording defendants, after indictment, a federal forum in which to assert their defenses – including those based on the Constitution."  *Id.* at 69.  A contrary result, allowing "ancillary equitable proceedings" by "[p]rospective defendants," would "encourage a flood of disruptive civil litigation."  *Id.* at 71.

The *Deaver* Court grounded its conclusion on two considerations applicable here.  First, allowing the plaintiff to independently raise a constitutional challenge that also served as a defense in a pending enforcement action would frustrate the final judgment rule.  *Id.* at 70.  While a plaintiff unsuccessful in seeking injunctive relief on the constitutional issue could immediately appeal this adverse decision, a denial of a Rule 12(b) motion on the constitutional defense in the enforcement action would not be immediately appealable.  *See Am. Fed. of Gov't Emps. Local 1 v. Stone*, 502 F.3d 1027, 1039-40 (9th Cir. 2007) (noting the "general rule that defendants are not entitled to interlocutory appellate review of a district court's denial of a Rule 12(b)(6) motion").  Second, and more importantly, permitting "ancillary equitable proceedings" on constitutional defenses would contravene long-standing principles of constitutional avoidance.  *Deaver*, 822 F.2d at 71.  As the *Deaver* court noted, courts "have an obligation to avoid constitutional questions if at all possible."  *Id.* (citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346-48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).  "This principle is particularly strong when the constitutionality of a federal statute is challenged."  *Id.*  Here, Morgan Drexen purports to reserve additional defenses to the CFPB's enforcement action, including a series of non-constitutional statutory defenses.  *See* Compl. at 20-21.  Permitting all of these defenses to be adjudicated simultaneously in the California enforcement action would

serve important principles of constitutional avoidance, allowing that court to resolve the issue in Morgan Drexen's favor without addressing the constitutional question raised here.  *See Escambia County v. McMillan*, 466 U.S. 48, 51, 104 S.Ct. 1577, 80 L.Ed.2d 36 (1984) ("It is a well established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.").

Morgan Drexen attempts to distinguish *Deaver* as limited to the criminal context, arguing that the case has no application outside of attempts to enjoin pending criminal proceedings.  Pls.' MTD Opp'n at 15-17.  The Court finds this contention unavailing.  As the Bureau points out, the equitable considerations underlying the *Deaver* decision apply equally in the civil enforcement context.  Def.'s MTD Reply at 4.  Just as the *Deaver* court concluded that Federal Rule of Criminal Procedure 12(b) provided Mr. Deaver an opportunity to raise his constitutional argument as a preliminary defense, *Deaver*, 822 F.3d at 70, so too here Federal Rule of Civil Procedure 12(b)(6) provides Morgan Drexen an adequate remedy for adjudication of its separation of powers challenge.  Similarly, the principles of constitutional avoidance and respect for the final judgment rule animating the *Deaver* decision carry equal weight in the civil context. Moreover, although *Deaver* did not involve a parallel state court proceeding, the court there noted that its decision was closely tied to principles of *Younger* abstention and the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Deaver*, 822 F.2d at 71 (Ginsburg, D.H., concurring) (quoting *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).  Importantly in this respect, the Supreme Court has extended *Younger* abstention to the

civil enforcement context, further blurring the distinction between criminal prosecution and civil enforcement that Morgan Drexen seeks to draw here. *See Trainor v. Hernandez*, 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (holding that "the principles of *Younger* . . . are broad enough to apply to interference by a federal court with an ongoing civil enforcement action . . . brought by the State in its sovereign capacity."). Accordingly, the Court finds *Deaver* controlling in this context.

Next, Morgan Drexen argues more broadly that its challenge should be heard because it constitutes a facial constitutional challenge to the agency's enabling statute, and facial challenges are "presumptively reviewable." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 464 (D.C. Cir. 2006). Yet all of the cases cited by Morgan Drexen on this point involve when and whether statutory authorization for judicial review of agency action permits plaintiffs to bring their constitutional challenges. *See, e.g., Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S.Ct. 3138, 3150, 177 L.Ed.2d 706 (2010) (considering whether "the statutes providing for judicial review of Commission action . . . prevent[ed] the District Court from considering petitioners' claims"); *Hettinga v. United States*, 560 F.3d 498, 506 (D.C. Cir. 2009) (addressing whether petitioners were required to exhaust administrative remedies before bringing their constitutional challenge); *Gen. Elec. Co. v. E.P.A.*, 360 F.3d 188, 190-94 (D.C. Cir. 2004) (determining whether §113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act "bar[s] pre-enforcement review of facial constitutional challenges"); *Elk Run Coal Co. v. U.S. Dep't of Labor*, 804 F.Supp.2d 8, 21 (D.D.C. 2011) (holding that the Mine Act's provision requiring administrative exhaustion of any citation or order of the Mine Health Safety Administration did not apply to a constitutional challenge to the Mine Act). In the cases cited by Plaintiffs, courts undertake the *separate and distinct* question of

whether "the 'statutory scheme' [at issue] displays a 'fairly discernible' intent to limit jurisdiction, and [whether] the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure." *Free Enterprise Fund*, 130 S.Ct. at 3150 (quoting *Thunder Basin Coal v. Reich*, 510 U.S. 200, 207, 212, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994)). Here, the inquiry into whether Morgan Drexen is entitled to injunctive relief is *not* one of statutory interpretation, but rather requires the application of long-standing equitable principles. The Court must simply assess: (1) whether Plaintiff has an adequate remedy at law, and (2) whether the denial of injunctive relief would cause Plaintiff irreparable harm.

Plaintiffs rely heavily on selective quotations from the Supreme Court's opinion in *Free Enterprise Fund* for their argument that they need not raise their constitutional challenge as a defense in the pending enforcement action. *See* Pls.' MTD Opp'n at 7-10, 17-18. However, as noted, the language cited by Plaintiffs comes in the context of the Court's discussion of whether "the statutes providing for judicial review of [agency] action . . . prevent[ed] the District Court from considering petitioners claims" and whether a statutory provision in the Sarbanes-Oxley Act requiring that issues be raised initially before the agency provided "an exclusive route to review." *Free Enterprise Fund*, 130 S.Ct. at 3150. Concluding that the plaintiffs were not required to raise their constitutional challenge before the agency prior to bringing suit in federal court, the Court did not address, much less mention, the equitable factors that guide this Court's decision to allow adjudication of this issue in *another* federal court. *Id.* at 3151 ("We therefore conclude that § 78y did not strip the District Court of jurisdiction over these claims, which are properly presented for our review."). Plaintiffs' extensive citation to *Free Enterprise Fund* is therefore unpersuasive.

Indeed, Plaintiffs' attempt to create a special category of review for facial constitutional challenges fails to address the binding precedent of *Deaver*.   As with Morgan Drexen's challenge, *Deaver* involved a facial constitutional challenge to a federal statute based on separation of powers principles.   822 F.2d at 67.   Yet, contrary to Plaintiffs' claims, the fact that the plaintiff in *Deaver* raised a facial constitutional challenge did not strengthen the argument for review.   Rather, under principles of constitutional avoidance, it *undermined* the argument for injunctive relief.   "That [Plaintiffs'] challenge is a serious one with far-ranging and troubling constitutional implications does not support [their] argument for accelerated and unorthodox judicial review.   Indeed, it *substantially weakens* it."   *Id.* at 71 (emphasis added).   Accordingly, the Court rejects Morgan Drexen's argument that facial constitutional challenges represent an exception to general principles of equity.

More generally, Plaintiffs contend that denying them injunctive relief in this Court permits the CFPB to adjudicate constitutional challenges "on its own terms."   Pls.' MTD Opp'n at 9-11, 21-23.   Plaintiffs argue that if the Court were to reject their claim for injunctive relief on jurisdictional grounds, it would mean that any plaintiff seeking to challenge the constitutionality of the CFPB would be at the Bureau's mercy.   If a plaintiff dared to bring a constitutional challenge, the Bureau would simply bring a subsequent enforcement action and force the plaintiff to become a defendant.   Alternatively, a plaintiff would be forced to wait for the CFPB to bring an enforcement action in order to have its constitutional claim adjudicated.   The Court considers these predictions somewhat of an exaggeration.   In this particular factual scenario, where a pending enforcement action provides Morgan Drexen an adequate opportunity to raise its constitutional challenge without subjecting it to irreparable harm, the Court concludes that injunctive relief is plainly inappropriate.   Such a result hardly requires that *all* plaintiffs seeking

to challenge the CFPB's constitutionality must do so as a defense in a Bureau enforcement action.  Constitutional challenges can (and likely will) be brought in myriad other situations, such as where the agency does not bring an enforcement action or in a challenge to agency rulemaking.  Moreover, the Court presumes that agency enforcement actions are brought in good faith and that the Bureau will not simply manufacture a spurious enforcement action in order to turn a constitutional plaintiff into an enforcement defendant.   Accordingly, in this specific context, where another federal court action provides Plaintiff an adequate remedy, and the denial of injunctive relief would not subject them to irreparable harm, this Court concludes that injunctive relief is unwarranted.

### B.   Declaratory Relief

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).  As the use of the word "may" suggests, "[t]his language is permissive, not mandatory: even when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine 'whether and when to entertain an action.'"  *Swish Mktg., Inc. v. FTC*, 669 F.Supp.2d 72, 76 (D.D.C. 2009) (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).  *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants'") (quoting *Wilton*, 515 U.S. at 286).

"In deciding whether to exercise its permissive jurisdiction over declaratory actions, a court may consider 'equitable, prudential, and policy arguments.'" *Swish Mktg.*, 669 F.Supp.2d at 76 (quoting *MedImmune*, 549 U.S. at 136).  "There are no dispositive factors to consider in this analysis." *Comm. on the Judiciary v. Miers*, 558 F.Supp.2d 53, 95 (D.D.C. 2008).  Rather, the D.C. Circuit has identified a set of factors to guide the inquiry:

> Among the factors relevant to the propriety of granting a declaratory judgment are the following: whether it would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Hanes Corp. v. Millard*, 531 F.2d 585, 591 n. 4 (D.C. Cir. 1976).  The *Hanes* court also noted that "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure" as "[i]t deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse."  531 F.2d at 592-93.[3]

Here, "the balance of the relevant factors counsels against exercising jurisdiction over this action." *POM Wonderful LLC v. Federal Trade Commission*, 894 F.Supp.2d 40, 44 (D.D.C. 2012).  First, adjudication of this proceeding will not "finally settle the controversy between the parties." *Hanes*, 531 F.2d at 591 n. 4.  Morgan Drexen argues that if the Court were to grant it the declaratory relief sought and declare the CFPB unconstitutional, then the California enforcement action would be mooted, resolving the entire controversy between the parties.  Pls.' MTD Opp'n at 19.  Yet in applying this factor, "[t]he Court cannot assume . . . that it will resolve

---

[3] Morgan Drexen questions the application of the *Hanes* factors here, arguing that the cases applying these factors are distinguishable because they did not involve facial constitutional challenges to an agency's enabling statute. Pls.' MTD Opp'n at 18-19.  The Court rejects this argument, as nothing in any of the cases cited by either party indicates that this analysis is any different in cases involving facial constitutional challenges to a federal administrative agency's enabling statute.

the merits of [Plaintiffs'] complaint in [their] favor." *Swish Mktg.*, 669 F.Supp.2d at 77. Indeed, if the Court were to decide against Morgan Drexen, then nothing in the California litigation would be settled. By contrast, if the Court declined jurisdiction here, then *both* the enforcement action and the constitutional claim could be adjudicated in a single proceeding in the Central District of California. "In the discretionary balance which this court holds, avoidance of piecemeal litigation weighs in favor of dismissal." *Gov't Employees Ins. Co. v. Rivas*, 573 F.Supp.2d 12, 15 (D.D.C. 2008). Here, dismissal would provide a more efficient vehicle for the resolution of the parties' related disputes.[4] Particularly in an era when government resources are scarce, "it would not be prudent for this Court to expend limited judicial resources to resolve issues which would not fully resolve the plaintiffs' claim." *Roth v. D.C. Courts*, 160 F.Supp.2d 104, 110 (D.D.C. 2001).

Furthermore, and relatedly, this Court gives strong weight to the fact that "other remedies are available" and that there are "other proceedings pending" in which these claims may be resolved. *Hanes*, 531 F.2d at 591 n.4. Here, Morgan Drexen will be able to raise its constitutional claim in the enforcement proceeding in the Central District of California. "Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *Swish Mktg.*, 669 F.Supp.2d at 80 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004). As discussed, the pending California enforcement proceeding based on the CFPB's

---

[4] Morgan Drexen correctly points out that Pisinski is not a defendant in the California lawsuit and that the California court cannot adjudicate her claims if this action is dismissed. Pls.' MTD Opp'n at 18. Nevertheless, because this Court concludes, *infra*, that Pisinski lacks standing to bring her claims against the Bureau and that she is not properly a plaintiff in this suit, her absence from the California litigation does not bear on the declaratory judgment balancing.

investigation of Morgan Drexen offers the potential to address the issue raised in Plaintiffs'
declaratory judgment action. By contrast, this Court is confined to addressing *only* this single
issue, rather than the complete controversy between the parties. Accordingly, this factor also
counsels against exercising jurisdiction to grant declaratory relief.

The third factor – the convenience of the parties – does not clearly favor either side.
Plaintiffs argue that because their counsel and the CFPB are located in the District of Columbia,
and the investigation at issue took place here, it is more convenient for the parties to litigate the
constitutional question here. Pls.' MTD Opp'n at 20. The CFPB, by contrast, contends that
because Morgan Drexen, its employees, and its records are located in the Central District of
California, the action is more properly adjudicated there. Def.'s MTD Reply at 7. Furthermore,
they argue that adjudicating this matter in one forum as opposed to two would also be more
convenient for the parties. *Id.* Since both sides raise arguments that one forum would prove
more convenient, this factor does not cut in favor of either party.

Yet although this factor is neutral, the next two factors – the equity of the conduct of the
declaratory judgment plaintiff and the prevention of "procedural fencing" – favor dismissal. "In
examining whether to resolve a declaratory judgment action, 'courts take a dim view of
declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a
'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable
forum.'" *Swish Mktg.*, 669 F.Supp.2d 72, 78 (quoting *AmSouth*, 386 F.3d at 788). Here, Morgan
Drexen argues that it acted with the "utmost equity", filing suit prior to the CFPB's initiation of
its enforcement action and before a final determination as to enforcement was even made. Pls.'
MTD Opp'n at 20-21. Yet the record reveals that at the time of filing suit, Morgan Drexen was
aware of the likelihood of a Bureau enforcement action. Shaheen Decl. ¶ 38, Ex. 32 (Letter from

Wendy Weinberg to Randal Shaheen).   Indeed, at the conclusion of the Bureau's year-long investigation of Morgan Drexen, the Bureau informed Morgan Drexen's counsel that "[the Bureau's Office of Enforcement] expects to allege that your clients violated Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. § 5536 and the Telemarketing Sales Rule, 16 C.F.R. § 310." *Id.*   These were the very claims ultimately brought in the California action filed mere weeks after this suit.   Moreover, although Plaintiffs point to statements from CFPB counsel in a conference call with the Court that CFPB had "not determined whether or not to file an enforcement action," the larger context of this conversation reveals that the Bureau, when questioned by the Court, reserved its right to bring an enforcement action pursuant to the letter advising Plaintiffs' of their alleged infractions.   *See* Transcript of July 25, 2013 Conference Call at 5:10-6:11.   Accordingly, it strains credulity for Plaintiffs to argue they were not on notice of a potential enforcement suit, particularly on the heels of a year-long investigation.[5]

Relatedly, the Court considers declaratory relief inappropriate here because Morgan Drexen is essentially asking for adjudication of an anticipatory defense.   As the D.C. Circuit has noted, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure.   It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse."   *Hanes*, 531 F.2d at 592-93.   Here, Morgan Drexen's constitutional challenge is an anticipatory defense to the Bureau's enforcement action.   Indeed, the Bureau can hardly enforce the TSR and the Dodd-Frank Act against Morgan Drexen if it is

---

[5] This finding of "procedural fencing" is further supported by the fact that Plaintiffs appear to be engaging in some measure of forum-shopping with their suit.   Plaintiffs explain their desire to have this matter adjudicated here by pointing to the fact that "the D.C. Circuit has the most experience with constitutional issues affecting federal administrative agencies."   Pls.' PI Reply at 10.   While there are certainly worse examples of forum-shopping, Plaintiff still seeks to have this matter adjudicated in the forum of its choosing, depriving the Bureau of the choice of forum for its enforcement action – the Ninth Circuit.

*ab initio* unconstitutional.  Although Morgan Drexen argues that this challenge is not properly considered a defense, this argument is unavailing.  "A defense is 'a reason why the plaintiff should not recover or establish that which he seeks by his complaint,' and that is exactly what [Morgan Drexen] is asserting here."  *Swish Mktg.*, 669 F.Supp.2d 80 (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)).  Morgan Drexen's constitutional challenge plainly meets this standard.

To be sure, certain considerations in the *Hanes* analysis favor adjudication of Morgan Drexen's request for declaratory relief.  The state of the record is more advanced in this Court, where the parties have filed and fully briefed cross-motions for summary judgment.  Yet, while denying Morgan Drexen a declaratory judgment will postpone the resolution of this dispute, the delay is not severe.  Upon this ruling, Morgan Drexen can file a motion to dismiss in the California action, asserting its constitutional challenge to the CFPB under Federal Rule of Civil Procedure 12(b).  Such a motion would be fully briefed and ripe for decision in a matter of weeks.  Accordingly, balancing this moderate delay against the numerous factors counseling against providing declaratory relief here, this Court declines to exercise its permissive jurisdiction over this declaratory judgment action.[6]

---

[6] The remaining two *Hanes* factors do not provide significant weight on either side of the balance.  First, the parties are equally adverse in both forum.  Second, while deciding the constitutionality of a federal agency is certainly a "question" of "public importance", *Hanes*, 531 F.2d at 591 n.4, dismissal here would also serve important principles of constitutional avoidance.  As the Supreme Court has cautioned, a court considering whether to grant a declaratory judgment must be "keenly mindful . . . that judging the constitutionality of an Act of Congress is 'the gravest and most delicate duty [the courts are] called on to perform."  *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 204, 129 S.Ct. 2504, 174 L.Ed.2d 140 (2009) (quoting *Blodgett v. Holden*, 275 U.S. 142, 147-48, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (Holmes, J., concurring).  "It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."  *Escambia County*, 466 U.S. at 51.

### C.     Pisinski's Standing

Although the Court concludes that Plaintiff Morgan Drexen is not entitled to injunctive or declaratory relief because it may raise its claims as defenses in the pending California enforcement action, Plaintiff Pisinski is not a party to the enforcement action.  Nevertheless, the Court concludes that Pisinski's claims in this Court are also inappropriate because she lacks standing to bring this constitutional challenge to the Bureau's existence.

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered an "injury-in-fact," that is, "'an invasion of a legally protected interest' that is (i) 'concrete and particularized' rather than abstract or generalized, and (ii) 'actual or imminent' rather than remote, speculative, conjectural or hypothetical." *In re Navy Chaplaincy*, 534 F.3d 756, 759–60 (D.C. Cir. 2008) (quoting *Lujan*, 504 U.S. at 560).  Second, the asserted injury must be "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation omitted). Third, the plaintiff must demonstrate redressability: "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.* at 561 (citation omitted).  It is axiomatic that the "party invoking federal jurisdiction bears the burden of establishing these elements" of constitutional standing. *Id.*  In addition, as the D.C. Circuit has noted, "[w]here the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  Instead, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of injury." *Id.*

Plaintiff Pisinski makes two arguments in favor of her standing.[7]  First, she argues that she would suffer injury if Morgan Drexen were forced to comply fully with the Bureau's CIDs, which she alleges seek information that is protected by the attorney-client privilege.  Pls.' MTD Opp'n at 14.  On this issue, Pisinski claims that Morgan Drexen's provision of the information sought by the Bureau would interfere with her confidential relationships with her clients. Pisinski Decl. ¶¶ 4-10.  Yet, as the Bureau points out, this injury is illusory.  Def.'s MTD at 22-23.  The Bureau never sought Pisinski's privileged communications, as it informed Morgan Drexen of its right to assert any applicable privilege in response to the CID.  *See* Shaheen Decl., Ex. 1 at 3, Ex. 2 (Letter from Kent Marcus to Randal Sheehan) at 2.  Moreover, because the CIDs issued by the Bureau are not self-enforcing, *see* 12 U.S.C. § 5562(e), the Bureau could never have compelled Morgan Drexen to provide Pisinski's information without a court proceeding in which a claim of privilege could be asserted.  Furthermore, the Court must consider the timing of Pisinski's allegation.  Having now brought its enforcement action against Morgan Drexen, the Bureau has no reason to seek to compel Morgan Drexen to produce the allegedly privileged information by petitioning a court to enforce its CID.    Nor can it, as the Bureau may issue CIDs related to the subject of an investigation only "*before* the institution of any proceedings under Federal consumer financial law."  12 U.S.C. § 5562(c)(1) (emphasis added).

Nor can Pisinski premise her standing on the threat of a future CID that would violate her attorney-client privilege.  "[A]ny petitioner alleging only future injuries confronts a significantly

---

[7] Although Pisinski is correct that where "constitutional and prudential standing can be shown for at least one plaintiff, [a court] need not consider the standing of other plaintiffs to raise that claim," *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996), Pisinski cannot rely Morgan Drexen's standing here, as it has been dismissed from the case on other grounds.

more rigorous burden to establish standing." *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989). "To qualify for standing, the petitioners must demonstrate that the alleged future injury is 'imminent.'" *Chamber of Commerce v. E.P.A.*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). In order to "shift [] injury from 'conjectural' to 'imminent,'" a plaintiff must show a "substantial . . . probability" of injury. *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010). Here, Pisinski makes no effort to show a substantial probability of an imminent CID which would force her to turn over privileged information and thus interfere with her attorney-client relationships. Accordingly, the Court concludes that she cannot base standing on this ostensible injury.

Failing in her argument for standing based on interference with privilege, Pisinski asserts for the first time in her Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, an additional, much broader basis for standing. Pisinski argues that she "has standing to challenge the constitutionality of the agency that is threatening her client confidentiality, regulating her practice, investigating (and now suing) her paralegal, and alleging that what her paralegal (Morgan Drexen) is doing to assist her is in the practice of law is somehow unlawful." Pls.' MTD Opp'n at 15. Yet because Defendant has also sought summary judgment, Pisinski cannot simply premise her standing on "general factual allegations of injury resulting from the defendant's conduct . . . ." *Lujan*, 504 U.S. at 561. "In response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal citations omitted). Yet the only portions of Pisinski's declaration that do not relate to her privilege allegations are the following three sentences. First she states, "I contract with Morgan Drexen to provide non-

attorney/paralegal services that support my law practice.  I supervise Morgan Drexen and remain responsible for all services delegated to Morgan Drexen."  Pisinski Decl. at ¶ 3.  Next, she concludes the declaration by stating, "Another of the reasons [why I have joined in this lawsuit] is that I depend on Morgan Drexen to assist me in providing my clients with high-quality and relatively low cost legal services."  *Id.* ¶ 10.  Nowhere does the declaration mention that the Bureau is regulating Pisinski's practice or that she is harmed by any direct regulation.[8]  Rather, Pisinski's Declaration premises her harm (outside of the potential violation of attorney-client privilege) on the CFPB's regulation of her contractual counter-party, Morgan Drexen, with whom she "contract[s]" "to provide non-attorney/paralegal services that support my law practice."

As the Supreme Court has made clear, where, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed."  *Lujan*, 504 U.S. at 562.  "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."  *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 758, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).  Here, the injury alleged in Plaintiff Pisinski's *declaration* is that the CFPB's regulation of Morgan Drexen will deprive her of the "high-quality and relatively

---

[8] As support for the argument that Pisinski is herself regulated, Plaintiffs point to the following statement in the declaration of Randal Shaheen, one of the attorneys representing Plaintiffs in this action: "During my representation of Morgan Drexen, CFPB has informed me that their concern is that the attorneys supported by Morgan Drexen are in violation of the amended Telemarketing Sales Rule because the attorneys charge their clients hourly fees for the preparation of bankruptcy pleadings."  Shaheen Decl. ¶ 43.  This statement, which is itself unsupported by any factual evidence, does not establish that CFPB is regulating attorneys.  Mere "concern" in the absence of any substantive action against an entity does not equate with regulation.  In any case, there is no allegation that any future regulation is imminent.  *See Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be certainly impending to constitute injury in fact.") (internal quotation marks omitted).

low cost legal services" Morgan Drexen provides her.  Pisinski Decl. ¶ 10.  The Court views this injury as far too speculative to support standing here.  *See Chamber of Commerce*, 642 F.3d at 201 (concluding that "[n]either declaration, however, suffices to demonstrate the 'substantial probability' of injury required to establish the petitioners' standing.").  Pisinski has provided no evidence that she will be unable to find a substitute for Morgan Drexen's services.  Indeed, other evidence in the record suggests that such alternatives are in fact available to attorneys.  In his declaration, Walter Ledda, the CEO of Morgan Drexen states his concern that if the CFPB continues to take action against his company, "[a]ttorneys who contract with Morgan Drexen will potentially terminate their contracts *in favor of other companies* that are not being requested to produce their clients' personal financial information to CFPB."   Ledda Decl. ¶ 10(a) (emphasis added).  Moreover, Pisinski has not even made the basic allegation that her business will suffer or that her costs will increase in the absence of Morgan Drexen's services.  She only alleges that her business will be "disrupted" if she is forced to turn over privileged material in response to a CFPB CID – a distinct and as discussed, *supra*, unavailing basis for her injury. Pisinski Decl. ¶ 4.  Lacking the most basic allegations of injury, Pisinski's declaration provides an inadequate basis for standing.  Moreover, as the Bureau points out, granting Pisinski standing on the basis of these limited allegations would effectively provide standing to *any* contractual counterparty of a regulated entity.  In light of the Supreme Court's warning that establishing standing is "substantially more difficult" in the context of a non-regulated entity, *Lujan*, 504 U.S. at 562, this Court will not premise a drastic expansion of standing doctrine on three unelaborated sentences in Pisinski's declaration.

Indeed, these allegations of injury are so bare that even if Pisinski is correct that she is "effectively regulated" by the CFPB's regulation of Morgan Drexen, her declaration still fails to

show any injury resulting from this regulation.  Pisinski makes no claim of the harm that would befall her from the regulation of her "paralegal."  As noted, she has not stated that she would be unable to find an alternative source for Morgan Drexen's services or that the loss of Morgan Drexen's services would increase her costs or hurt her business.  Furthermore, there is no allegation that the CFPB is planning to proceed against her, unsubstantiated statements about the Bureau's "concerns" notwithstanding.  *See* Shaheen Decl. ¶ 43.  In fact, it bears noting that *nothing* in the record beyond the conclusory statements contained in Plaintiffs' declarations even establishes that the relationship between Morgan Drexen and the attorneys it contracts with is akin to that between a paralegal and an attorney.  Aside from the mere invocation of the term "paralegal", Pisinski never even describes the services for which she relies on Morgan Drexen for assistance, much less the injury that would be inflicted upon her from the deprivation of these services.  In the absence of a more significant factual showing or legal support for this extension of standing doctrine, the Court is reluctant to accept Pisinski's argument.  Accordingly, the Court concludes that her claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's [17] Motion to Dismiss, or in the Alternative, for Summary Judgment.  As the Court does not reach the merits of Plaintiffs' constitutional challenge to the Bureau's existence, the Court DENIES WITHOUT PREJUDICE Plaintiffs' [13] Motion for Summary Judgment.  Similarly, because the Court dismisses this action without prejudice in its entirety, Plaintiffs' [15] Motion for a Temporary Restraining Order and Preliminary Injunction Enjoining CFPB from Prosecuting its Second-Filed Action is DENIED AS MOOT.   An appropriate Order accompanies this Memorandum Opinion.


Dated: October 17, 2013

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge